**PERMIAN BASIN PETROLEUM ASSOCIATION, Chaves County, New Mexico, Roosevelt County, New Mexico, Eddy County, New Mexico, and Lea County, New Mexico, Plaintiffs,**

v.

**DEPARTMENT OF THE INTERIOR, U.S. Fish and Wildlife Service, Sally Jewel, and Daniel M. Ashe, Defendants.**

No. MO–14–CV–50.

United States District Court, W.D. Texas, Midland–Odessa Division.

Signed Sept. 1, 2015.

James T. Banks, Joanne Rotondi, Hogan Lovells U.S. LLP, Washington, DC, Jennifer L. Biever, Hogan Lovells U.S. LLP, Denver, CO, Lisa K. Hooper, Andrew Harper Estes, Lynch, Chappell & Alsup, P.C., Midland, TX, for Plaintiffs.

Daniel Joseph Pollak, Hao–Chin Hubert Yang, Lesley Karen Lawrence–Hammer, U.S. Department of Justice, Washington, DC, for Defendants.

***ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT***

ROBERT JUNELL, Senior District Judge.

On April 10, 2014, Fish and Wildlife Service (FWS) published a final rule in which FWS listed the lesser prairie-chicken (LPC) as a threatened species. LPC Final Rule, 79 Fed.Reg. 19,974 (Apr. 10, 2014). Plaintiffs filed suit on June 9, 2014, challenging this listing decision. (Doc. 1). Plaintiffs argue FWS did not follow its own rules or provide a rational basis for the listing decision. (Doc. 1 at 48–51). Plaintiffs ask the Court to hold its listing decision as unlawful and set it aside. (*Id.*). Plaintiffs and Defendants each filed competing Motions for Summary Judgment on May 7, 2015. (Doc. 66, 67). Both parties filed Responses (Doc. 74, 75) and Replies (Doc. 82, 83).

■ Plaintiffs' three overarching claims before the Court are:

(1) Whether FWS followed their own rule for evaluating conservation efforts (Policy for Evaluation of Conservation Efforts When Making Listing Decisions (PECE)), which requires a two-part (15 criteria) analysis.

(2) Whether FWS cited/explained a rational decision to list the LPC as a threatened species based on the best scientific evidence available.

(3) Whether FWS responded to significant and highly relevant comments raised by Plaintiffs.

(Doc. 1 at 48–51). Plaintiffs bear the burden of proving FWS's decisions were arbitrary and capricious. *See San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C.Cir.1986) (en banc); *see also* 5 U.S.C. § 706(2)(A).

The Court grants summary judgment in favor of Plaintiffs as to Claim 1. (Doc. 67). The Court further grants summary judgment in favor of Defendants on Claims 2 and 3 as Plaintiffs have not carried their burden of demonstrating FWS acted arbitrarily and capriciously concerning these claims. (Doc. 66).

## ADMINISTRATIVE PROCEDURE BACKGROUND

On October 6, 1995, FWS received a petitions from the Biodiversity Legal Foundation, Boulder, Colorado and Marie E. Morrissey. LPC Final Rule, 79 Fed. Reg. 19,974 (Apr. 10, 2014). These petitioners requested that FWS list the LPC as threatened throughout its known historic range in the United States, and that a critical habitat be designated as soon as the needs of the species are sufficiently well known. *Id.* However, from October 1995 through April 1996, funding for FWS's listing program was severely reduced or eliminated and FWS was unable to act on the petition. LPC Petition, 63 Fed.Reg. 31,400 (June 9, 1998).

Eventually, FWS made a 12–month finding identifying the LPC as a candidate for listing with a low priority number [1] of 8. LPC Final Rule, 79 Fed.Reg. at 19,975. WildEarth Guardians filed a lawsuit against FWS on September 1, 2010, for failure to make expeditious progress toward listing the LPC. LPC Final Rule, 79 Fed.Reg. at 19,975. The case resulted in a judicially approved settlement agreement requiring FWS to submit a proposed listing rule concerning the LPC no later than September 30, 2013. LPC Proposed Rule, 77 Fed.Reg. 73,828 (Dec. 11, 2012). On July 9, 2013, FWS made a one-time extension of that deadline for final determination by 6–months, as permitted under 16 U.S.C. § 1533(a)(6)(B)(i). This created a new deadline of March 30, 2014 for submitting the final rule to the Federal Register. LPC 6–Month Extension, 78 Fed.Reg. at 41,023 (July 9, 2013). FWS held five public comment periods during that timeframe.[2]

On December 11, 2012, FWS published a proposed rule in the Federal Register to list the LPC as a threatened species under the Act. LPC Proposed Rule, 77 Fed.Reg. 73,828. On May 6, 2013, FWS published a proposed special rule under Section 4(d) of the Act (16 U.S.C. § 1531 et seq.). The special rule allows for the "take" [3] of LPC incidental to activities under a comprehen-

---

[1]. The Listing Priority Number system was created to enable FWS to focus on the most important cases with the greatest immediate needs. LPC Final Rule, 79 Fed.Reg. at 19,975. The priority number is given on a scale of 1–10, 1 being the highest priority and 10 being the lowest. *Id.*

[2]. December 11, 2012–March 11, 2013 (LPC Proposed Rule, 77 Fed.Reg. 73,828 (Dec. 11, 2012)). May 6, 2013–June 20, 2013 (LPC Proposed Rule with Special Rule, 78 Fed.Reg. 26,302 (May 6, 2013)). July 9, 2013–August

8, 2013 LPC (6–Month Extension, 78 Fed.Reg. at 41,022 (July 9, 2013)). December 11, 2013–January 10, 2014 (LPC Proposed Rule with Special Rule, 78 Fed.Reg. 75,306 (Dec. 11, 2013)). January 29, 2014–February 12, 2014 (LPC Proposed Rule with Special Rule, 79 Fed.Reg. 4,652 (Jan. 29, 2014)).

[3]. "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

sive conservation program developed by or in coordination with a State agency and approved by FWS. LPC Proposed Rule with Special Rule, 78 Fed.Reg. 26,302 (May 6, 2013). The comment period was subsequently reopened. (Id.). On December 11, 2013, FWS proposed to revise the special rule. FWS accepted public comments on that revised proposal for 30 days, ending January 10, 2014. LPC Proposed Rule with Special Rule, 78 Fed.Reg. 75,306 (Dec. 11, 2013). On January 29, 2014, FWS reopened the public comment period on the proposed revised special rule for two weeks, ending February 12, 2014. LPC Proposed Rule with Special Rule, 79 Fed.Reg. 4,652 (Jan. 29, 2014). However, FWS received updated enrollment numbers in the rangewide plan (RWP)[4] on March 24, 2014, six days before FWS was required to submit its final listing decision to the Federal Register. (Doc. 90 at 52). FWS acknowledged these updated figures revealed pending applications for enrollment by landowners, though none had enrolled at that time. (Doc. 90 at 52). Nonetheless, FWS had already signed and submitted its Final Rule listing the LPC as a threatened species on March 21, 2014. LPC Final Rule, 79 Fed.Reg. at 20,071. On April 10, 2014, the Federal Register published the final rule, listing the LPC as a threatened species. Id. at 19,974.

## ENDANGERED SPECIES ACT

This case concerns FWS's decision to list the LPC as a threatened species under the Endangered Species Act (ESA). Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of" those species. 16 U.S.C. § 1531(b). The ESA defines an endangered species as "any species which is in danger of extinction throughout all or a significant portion of its range." Id. §§ 1532(6). A threatened species is one that is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. §§ 1532(20).

Section 4(a) of the ESA provides that the Secretary of the Interior, through the FWS, "shall by regulation ... determine whether any species is an endangered species or a threatened species because of any" of five enumerated listing factors. Id. § 1533(a)(1). These listing factors are:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

Id. § 1533(a)(1)(A)-(E). Additionally, Section 4(b) of the ESA requires the Secretary to make listing decisions "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State ... to protect such species...." Id. § 1533(b)(1)(A).

■ Conservation efforts can affect FWS's decision to list a species by improving the species' status. See Defenders of Wildlife v. Jewell, 70 F.Supp.3d 183, 193–94 (D.D.C.2014) (challenging FWS's decision to not list a species as threatened or endangered after successful conservation efforts improved the species' status). In

---

**4.** The RWP is a large conservation effort designed to preserve the LPC habitat and range.

It is discussed more thoroughly in later sections of this order.

1999, the FWS and National Marine Fisheries Service (NMFS) established a policy to encourage states and private actors to undertake voluntary efforts to conserve "candidate species," which are those species being considered for an ESA listing. Under the Candidate Conservation Agreements with Assurances (CCAA) framework, in return for implementing agreed-upon conservation measures, state and private entities receive "assurances from [FWS] that additional conservation measures will not be required ... should the species become listed in the future." Final Policy for Candidate Conservation Agreements with Assurances, 64 Fed.Reg. 32,-726, 32,727 (June 17, 1999). While CCAAs are designed to "remov[e] any need to list the covered species," the mere existence of a CCAA will not preclude listing. *Id.* Nonetheless, CCAAs have over time become a common mechanism for promoting conservation of numerous candidate species. The RWP at issue in this case is a conservation strategy that employs CCAAs as well as Candidate Conservation Agreements (CCAs), which involve federal participants, as opposed to state and private participants. *See* LPC Final Rule, 79 Fed.Reg. at 19,990–92.

In 2003, the FWS and NMFS announced their Policy for Evaluation of Conservation Efforts When Making Listing Decisions (PECE). *See* PECE, 68 Fed.Reg. 15,100 (Mar. 28, 2003). Under Section 4(b), FWS is required to take "into account those [conservation] efforts, if any, being made by any State" before making a listing decision. 16 U.S.C. § 1533(b)(1)(A). The PECE allows FWS to consider conservation efforts that have not yet been implemented or demonstrated their effectiveness, so long as FWS evaluates the certainty the conservation effort will be implemented and effective. PECE, 68 Fed.Reg. at 15,114. At issue in this case is whether FWS evaluated the RWP properly under the PECE.

## SUMMARY JUDGMENT STANDARD

■ This case involves the review of an administrative agency action: FWS's decision to list the LPC as a threatened species under the ESA. Typically, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Judicial review of agency action under the ESA is governed by the same arbitrary and capricious standard as the Administrative Procedure Act (APA). *See Cabinet Mountains Wilderness v. Peterson,* 685 F.2d 678, 685 (D.C.Cir.1982) ("Since the ESA does not specify a standard of review, judicial review is governed by section 706 of the Administrative Procedure Act....").

■ When assessing a summary judgment motion in an APA case, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C.Cir.2001). "The entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993). "In such a case, summary judgment merely serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Oceana, Inc. v. Locke,* 831 F.Supp.2d 95, 106 (D.D.C.2011). "Moreover, the party challenging an agency's action as arbitrary and capricious bears the burden of proof." *See San Luis Obispo Mothers for Peace,* 789 F.2d at 37.

■ Under the APA, a reviewing court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency acts in an arbitrary and capricious manner if it "has relied on factors which Congress

has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

 In determining whether to list a particular species as threatened or endangered, an agency is required to base its decision "solely on the basis of the best scientific and commercial data available...." 16 U.S.C. § 1533(b)(1)(A). "The Court will give an extreme degree of deference to the agency when it 'is evaluating scientific data within its technical expertise.'" *Oceana, Inc. v. Pritzker*, 24 F.Supp.3d 49, 59 (D.D.C.2014) (quoting *Huls Am., Inc. v. Browner*, 83 F.3d 445, 452 (D.C.Cir.1996)). And "[w]hen examining a scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential." *Id.* (quoting *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983)).

## DISCUSSION

### Claim One: FWS failed to properly apply the PECE to its evaluation of the RWP.

Plaintiffs' first claim FWS failed to properly apply its PECE to the RWP, which is a conservation effort aimed at addressing threats to the LPC's range and habitat. (Doc. 1 at 48–49). Plaintiffs challenge FWS's assessment of the RWP and its impact on the LPC population and habitat. For the reasons discussed below, the Court grants summary judgment in favor of Plaintiffs as to this first overarching claim. FWS failed to properly apply PECE to its evaluation of the RWP resulting in material error. This caused FWS to arbitrarily and capriciously list the LPC as a threatened species. Accordingly, the Court vacates the final rule.

The RWP is a conservation effort implemented "by the five range states of Texas, New Mexico, Oklahoma, Kansas and Colorado to conserve the [LPC]." (Endorsement of the Rangewide Conservation Plan ....pdf, LRI Doc. 664 at L014481);[5] LPC Final Rule, 79 Fed.Reg. at 19,979–80. Private landowners voluntarily enter into formal agreements with FWS to maintain and enhance land within the LPC range. (Endorsement of the Rangewide Conservation Plan ....pdf, LRI Doc. 664 at L014481); *see also* (LPC RWP Final.21102013.pdf, LRI Doc. 667 at L014488–860); LPC Final Rule, 79 Fed.Reg. at 19,979–80. The RWP functions by incentivizing industry and landowner participation in the LPC range conservation process. (LPC RWP Final.21102013.pdf, LRI Doc. 667 at L014497–98, L014562, L014766–69). Participants pay an enrollment fee. (*Id.*). Those funds are then used to implement conservation efforts. (*Id.*). Industry participants unable to completely avoid damaging LPC habitat pay mitigation fees. (*Id.*). Landowners, including industry participants, who enroll "offset" land—land

---

5. Citation to documents in the administrative record will note the document title, the Listing Rule Index document number (LRI Doc. # ), followed by the citation to the six-digit Listing Rule Bates Number (L######) found at the bottom-right corner of the document (e.g., **Document Name, LRI Doc. ## at L######**).

which will be set aside to improve and preserve the LPC range—will receive payments and additional economic incentives for maintaining and improving the LPC range for a set number of years. (*Id.*).

The RWP addresses threats to the LPC throughout its range, "establishes measurable biological goals and objectives for population and habitat, provides the framework to achieve these goals and objectives, demonstrates the administrative and financial mechanisms necessary for successful implementation, and includes adequate monitoring and adaptive management provisions." LPC Final Rule, 79 Fed.Reg. at 19,979–80. The RWP also "specifically exempts from regulation the take of lesser prairie-chicken if that take is incidental to carrying out the rangewide plan." *Id.* at 19,980.

Plaintiffs move for summary judgment on their first claim that FWS did not properly conduct a "rigorous" PECE analysis of the RWP and such analysis did not rise to the level required under the PECE. *See* PECE, 68 Fed.Reg. at 15,114–15. Plaintiffs' Motion for Summary Judgment raised 9 issues,[6] which can be grouped into three subparts:

(1) Did FWS evaluate the RWP under the proper scope?

(2) Did FWS fail to conduct a thorough analysis of the RWP?

(3) Did FWS add requirements to the PECE analysis?

Because the Court finds FWS did not properly follow its own rule when conducting the PECE analysis, the Court vacates the final rule.

### PECE Overview

PECE requires FWS to evaluate all formalized conservation efforts not yet fully implemented or presently demonstrating effectiveness in two parts. The first part (and its 9 criteria) evaluates how likely it is an effort will actually be implemented. The second part (and its 6 criteria) evaluates the potential impact the effort will have on the species' status.

Part One: Whether the formalized conservation effort will be implemented (9 criteria):

1. The conservation effort, the parties to the agreement or plan that will implement the effort, and the staffing, funding level, funding source, and other resources necessary to implement the effort are identified.

2. The legal authority of the parties to the agreement or plan to implement the formalized conservation effort, and the commitment to proceed with the conservation effort are described.

3. The legal procedural requirements (e.g., environmental review) neces-

---

**6.** 1. FWS Failed to Evaluate the Cumulative Effects of All LPC Conservation Efforts As Required by Its PECE

2. FWS Wrongly Required That Planned Conservation Efforts Eliminate, Rather Than Reduce, Threats at the Time of Listing

3. The RWP PECE Document Is Not a PECE Evaluation

4. FWS Erroneously Assumed Industry's Incentive to Enroll in the RWP Would Be Removed If There Were No Listing and 4(d) Rule

5. FWS Wrongly Regarded Industry Enrollments as Adverse Impacts

6. FWS Did Not Consider the Actual Enrollment in the RWP

7. FWS Wrongly Concluded That the RWP Does Not Sufficiently Address the PECE Criterion Requiring an Implementation Schedule

8. FWS Provided Arbitrary, Inconsistent, and Unsupported Conclusions Concerning the Timing and Expected Benefits of the RWP

9. FWS Arbitrarily Assumed That, If Drought Persists, the RWP Will Not Create Additional Usable Habitat Necessary for the Species

sary to implement the effort are described, and information is provided indicating that fulfillment of these requirements does not preclude commitment to the effort.

4. Authorizations (e.g., permits, landowner permission) necessary to implement the conservation effort are identified, and a high level of certainty is provided that the parties to the agreement or plan that will implement the effort will obtain these authorizations.

5. The type and level of voluntary participation (e.g., number of landowners allowing entry to their land, or number of participants agreeing to change timber management practices and acreage involved) necessary to implement the conservation effort is identified, and a high level of certainty is provided that the parties to the agreement or plan that will implement the conservation effort will obtain that level of voluntary participation (e.g., an explanation of how incentives to be provided will result in the necessary level of voluntary participation).

6. Regulatory mechanisms (e.g., laws, regulations, ordinances) necessary to implement the conservation effort are in place.

7. A high level of certainty is provided that the parties to the agreement or plan that will implement the conservation effort will obtain the necessary funding.

8. An implementation schedule (including incremental completion dates) for the conservation effort is provided.

9. The conservation agreement or plan that includes the conservation effort is approved by all parties to the agreement or plan.

PECE, 68 Fed.Reg. at 15,114–15

Part Two: Whether the conservation effort will be effective (6 criteria):

1. The nature and extent of threats being addressed by the conservation effort are described, and how the conservation effort reduces the threats is described.

2. Explicit incremental objectives for the conservation effort and dates for achieving them are stated.

3. The steps necessary to implement the conservation effort are identified in detail.

4. Quantifiable, scientifically valid parameters that will demonstrate achievement of objectives, and standards for these parameters by which progress will be measured, are identified.

5. Provisions for monitoring and reporting progress on implementation (based on compliance with the implementation schedule) and effectiveness (based on evaluation of quantifiable parameters) of the conservation effort are provided.

6. Principles of adaptive management are incorporated.

*Id.* at 15,115. Overall, FWS needs to be certain that a formalized conservation effort improves the status of the species at the time of the listing determination after considering all the information. PECE, 68 Fed.Reg. at 15,100.[7]

---

7. "[F]or formalized conservation efforts not fully implemented, or where the results have not been demonstrated, [FWS] will consider the PECE criteria in our evaluation of whether, and to what extent, the formalized conservation efforts affect the species' status under the Act." PECE, 68 Fed.Reg. at 15,102.

### 1. What is the scope and purpose of the PECE?

Plaintiffs contend FWS failed to evaluate the cumulative effects of all LPC conservation efforts as required by FWS's PECE, instead reviewing the RWP in isolation of all other pending and existing conservation efforts. Plaintiffs argue the PECE evaluation should consider not only the RWP, but its cumulative impact in conjunction with all other current and pending efforts. Defendants contend the PECE was created only to review the potential effects of a pending effort and to determine whether the effort will actually be implemented. (Doc. 74 at 9–12). The PECE analysis of that effort is then considered and discussed within the final rule and listing determination in conjunction with all other efforts and information available. (*Id.*).

■■■ As a threshold matter, the Court must consider the proper level of deference to be given to FWS's interpretation of the PECE. If the PECE is unambiguous then no deference to FWS's interpretation is required. *See Belt v. EmCare, Inc.*, 444 F.3d 403, 408 (5th Cir.2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). If it is ambiguous, however, the analytical framework depends on whether FWS is interpreting its statute or regulation. An agency's interpretation of an ambiguous statute is entitled to *Chevron* deference when the interpretation is promulgated in the exercise of the agency's formal rule-making authority. *See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* requires deference to an agency's interpretation of an ambiguous statute if such interpretation is permissible. *See id.*

■■■ An agency's interpretation of its own ambiguous regulation is generally entitled to *Auer* deference, which defers to an agency's interpretation of its own ambiguous regulation unless "plainly erroneous or inconsistent with the regulation." *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (interpretations contained in policy statements, which lack the force of law, do not warrant *Chevron*-style deference.). If the regulation is unambiguous, the Court may nonetheless consider the agency's interpretation, but only according to its persuasive power. *See Belt*, 444 F.3d at 408 (citing *Christensen*, 529 U.S. at 588, 120 S.Ct. 1655).

■■■ Because the PECE is a creature of FWS's own design through the APA rulemaking procedure, FWS's interpretation of it would be controlling if the PECE were ambiguous unless plainly erroneous or inconsistent with the language of the policy itself. *See Auer*, 519 U.S. at 461, 117 S.Ct. 905; *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). However, the Court finds the PECE is unambiguous, therefore, FWS's interpretation of the PECE is irrelevant.

The PECE establishes a consistent set of criteria for FWS to follow when evaluating formalized conservation efforts not yet fully implemented or fully demonstrating their effectiveness. PECE, 68 Fed.Reg. at 15,104. The purpose of this analysis is to determine how an effort will affect the overall status of a species and how likely it is to be implemented. *Id.* ("The criteria of PECE set a rigorous standard for analysis and assure a high level of certainty associated with formalized conservation efforts that have not been implemented, or have yet to yield results, in order to determine that the status of the species has improved."). This prospective evaluation is important because under the ESA, FWS must, at the time of the listing decision, "determine whether any species is an en-

dangered species or a threatened species because of any" of five enumerated listing factors.[8] 16 U.S.C. § 1533(a)(1)(A)-(E). By their very nature, formalized plans not yet fully implemented or demonstrating their effectiveness will not have produced any meaningful results concerning these five ESA factors at the time of listing. Therefore, FWS created the PECE to ensure these plans were still able to contribute to a listing decision analysis. The PECE ensures fledgling plans have the opportunity to make a listing unnecessary, or contribute to that determination. PECE, 68 Fed.Reg. at 15,102 ("[F]or formalized conservation efforts not fully implemented, or where the results have not been demonstrated, [FWS] will consider the PECE criteria in our evaluation of whether, and to what extent, the formalized conservation efforts affect the species' status under the Act.").

In sum, while other efforts already in place are evaluated on the basis of whether they have adequately reduced or eliminated a threat, fledging efforts not yet demonstrating effectiveness must be evaluated under the PECE. The PECE determines whether a fledgling effort "improves" a species' status by evaluating (1) the projected likelihood that a given effort will actually be implemented and (2) the projected effectiveness of that effort. PECE, 68 Fed.Reg. at 15,100–01. If FWS has confidence the effort will be effective in the future at adequately reducing or eliminating a threat to the species, as well as confidence the effort will be implemented, that consideration may influence FWS to not list the species as threatened or endangered. *See, e.g., Defenders of Wildlife,* 70 F.Supp.3d at 191–92 & n. 11.

### 2. Did FWS conduct a thorough analysis of the RWP as the PECE required?

 The Court finds FWS did not apply the PECE properly in its evaluation of the RWP. The RWP PECE evaluation is entitled to only "some" deference. *See Christensen,* 529 U.S. at 586–87, 120 S.Ct. 1655 (agency interpretations that lack force of law do not warrant *Chevron*-style deference); *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (internal agency guidelines not "subject to the rigors of the Administrative Procedure Act, including public notice and comment," are entitled only to "some deference"). The standard of review for the RWP PECE evaluation is significantly less deferential, analyzed under *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), as it was not drafted pursuant to the rigors of the APA.[9] Nonetheless, FWS's PECE evaluation of the RWP is still entitled to "some" deference. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161 (an administrative agency's interpretative rules deserve deference according to their persuasiveness). Under *Skidmore,* the findings and conclusions within FWS's PECE evaluation of the RWP are not controlling, but will be given the proper weight in accordance with the thoroughness and validity of its reasoning, as well as its consistency with other pronouncements. *See id.*[10]

---

8. (1) the present or threatened destruction, modification, or curtailment of its habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; or (5) other natural or manmade factors affecting its continued existence. 16 U.S.C. § 1533(a)(1)(A)-(E).

9. Moreover, because the Court previously found the PECE itself was an unambiguous policy, weight is only given to FWS's application of the PECE to the RWP to the extent it is persuasive. *See Belt,* 444 F.3d at 408.

10. "[T]he rulings, interpretations and opinions of the Administrator under [an] Act, while not controlling upon the courts by rea-

Here, Plaintiffs contend FWS wrongly made inconsistent and incorrect assumptions and conclusions about the RWP's prospective impact and implementation based on the evidence presented. Several conclusions were based on cursory examination. The Court finds FWS's determinations here are not entitled to deference because its analysis was not sufficiently thorough, nor was its reasoning valid as important and material information were not considered in reaching the decision. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161.

■ Moreover, as explained below, even under more deferential standards such as *Auer* and *State Farm,*[11] the Court finds the RWP PECE evaluation still falls short. FWS failed to conduct the "rigorous" analysis of the RWP in several key portions that the PECE prescribed and failed to consider important and material information as well as important aspects of the problem, rendering its conclusions therein arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A); *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; PECE, 68 Fed.Reg. at 15,104 ("The criteria of PECE set a rigorous standard for analysis . . . ."). Similarly, FWS also evaluated the RWP and reached a conclusion in a manner inconsistent with its own final policy (the

PECE). *See Auer,* 519 U.S. at 461, 117 S.Ct. 905.

The following discussion summarizes FWS's two-part (and 15 criteria) PECE evaluation of the RWP. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004029). As explained below, the Court finds FWS's RWP PECE evaluation and conclusions were arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A); *San Luis Obispo,* 789 F.2d at 37.

At the outset, FWS made a critical assumption that shaped the entire RWP PECE evaluation: "[T]his analysis assumes that if a listing of the lesser prairie-chicken is precluded, much of the incentive for industry to enroll in the rangewide plan would be removed after March 31, 2014." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004029). No explanation was offered for this assumption other than the fact that the listing decision was due on March 31, 2014. (*Id.*). This conclusory assumption was arbitrary and capricious as no substantive basis was provided, legitimate or otherwise. FWS stated in the PECE, "It is our intention and belief that the PECE criteria will actually increase the voluntary participation in conservation agreements by increasing the likelihood

---

son of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161.

11. 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). *State Farm* is known for its "hard look" approach to the arbitrary and capricious standard. This requires an agency to examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *State Farm,* 463 U.S. 29, 43, 103 S.Ct. 2856 (1983). Review of that explanation requires a court to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Additionally, an agency rule is also considered arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

that parties' voluntary efforts and commitments that have yet to be implemented or have yet to demonstrate results will play a role in a listing decision." PECE, 68 Fed. Reg. at 15,104. FWS apparently abandoned that belief without offering adequate, let alone any, rationale. Moreover, this assumption replaced and prevented any meaningful analysis for Part One of the PECE analysis: Whether the conservation effort will be implemented. This assumption further tainted a large portion of Part Two as well: Whether the conservation effort will be effective.

As demonstrated in the discussion below, this error was material, negatively affecting the outcome in many critical findings.

***Part One: Whether the formalized conservation effort will be implemented.***

■ 1. The conservation effort, the parties to the agreement or plan that will implement the effort, and the staffing, funding level, funding source, and other resources necessary to implement the effort are identified.

*Parties:* FWS notes that the parties are clearly identified "[a]t a broad scale." The RWP will be administered by state wildlife agencies through the Western Association of Fish and Wildlife Agencies (WAFWA), which include: Colorado Parks and Wildlife; Kansas Department of Wildlife, Parks and Tourism; New Mexico Department of Game and Fish; Oklahoma Department of Wildlife Conservation; and Texas Parks and Wildlife Department. (LPC RWP PECE

analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004029–30). However, FWS states there is a high level of uncertainty concerning private participants "[a]t the finer scale" because private participation is voluntary and therefore FWS cannot ascertain who or how many private participants will enroll until enrollment. (*Id.*). At the time the PECE analysis was conducted, 17 industry participants were enrolled in the RWP and 169,534 qualified acres were enrolled, but no landowners had enrolled.[12] (*Id.*). Because no landowners had yet enrolled, FWS found there was "a high level of uncertainty regarding who will implement the conservation practices to offset industry enrollment and associated impacts." (*Id.*). The Court finds this assessment was neither thorough nor valid as FWS failed to consider important and material information necessary to make a proper PECE evaluation. *See Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. Further, this failure was inconsistent with the requirements of PECE, *see Auer*, 519 U.S. at 461, 117 S.Ct. 905, constituting material error.

Although no landowners had yet to enroll, the enrollment period was ongoing and, in fact, had just opened. This fact is important because PECE is intended to look forward and make a projection as to the number of land-

12. Prior to the publication deadline, on March 24, 2014, industry enrollment had increased to 28 companies and 9 additional companies were in discussions with WAFWA or in the process of added additional acreage. (LEPC Range-wide Plan—enrollment update 03/24/2014, LRI Doc. 68 at L001610). Industry participants had committed 3.65 million acres where voluntary conservation measures would be implemented. (*Id.*). Finally, industry participants had paid a total of $20,714,345.25 in enrollment fees, which would be used by WAFWA to implement conservation efforts. (*Id.*).

owners it anticipated. *See* PECE, 68 Fed.Reg. 15,100. FWS did not do this. Instead, FWS focused only on the current level of landowner enrollment at the time of the PECE analysis, which was zero. But forecasting based solely on one fact—current participation—would have been unreasonable even if some landowners had already been enrolled. Forecasting requires an assessment of multiple factors, particularly if the confidence in such an assessment is to be high. FWS should have considered factors not presently included in the record, such as prior industry and landowner participation in other conservation efforts in the area and FWS's assessment of RWP's incentives (e.g., Was it a good deal? Would those incentives make landowner participation more likely?),[13] among other things. FWS also failed to include in its analysis the most recent numbers it received prior to the publication deadline. The administrative record indicates FWS was aware enrollment was growing and would continue to do so, prior to the listing decision deadline. (LEPC Range-wide Plan-enrollment update 03/24/2014, LRI Doc. 68 at L001610–11) ("Industry enrollment under the RWP and CCAA has been rapid and extremely significant."); (Doc. 90 at 52). Failure to consider this new information constituted error as "[p]roperly analyzing the risks of an action requires an agency to use updated information or data; reliance on out-of-date or incomplete information may render the analysis of effects speculative and uncertain. . . ." *See*

*City of Dallas, Tex. v. Hall*, 562 F.3d 712, 720 (5th Cir.2009). These new numbers indicated pending landowner applications, which would have addressed FWS's main concern: lack of landowner participation. Yet FWS did not attempt to forecast future enrollment, nor did it make any effort to consider additional important factors. This was a material error in application of the PECE, rendering FWS's conclusions invalid. *See Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905. FWS should have made an effort to look forward—to make an educated forecast—yet it chose to focus entirely on the present enrollment and participation numbers, excluding many other potentially material factors.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

*Staffing:* The RWP provides for a program manager position, 8 technical staff members/biologists, 2 eco-regional coordinators, 5 administrators, and a geographic information systems coordinator. FWS concluded the RWP would be sufficiently staffed. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004030). Plaintiffs did not explicitly object to this finding. The Court deems this

---

**13.** This information is critical because the RWP itself acknowledges that the success of the plan is dependent on the appeal of its incentives. (LPC RWP Final.21102013.pdf, *LRI Doc. 667 at L014562*) ("To be successful, the conservation strategy must emphasize de-livery of habitat improvement in focal areas and connectivity zones by maximizing incentives to encourage landowners to engage in LPC habitat improvements. This has to be either economically neutral or economically advantageous to the landowner.").

finding reasonable as it contains a rational connection to the facts.

*Funding:* The PECE identifies the source of funding as the enrollment and mitigation fees paid by industry participants. (*Id.*). FWS expressed a high level of certainty in the *existing* source of funding, but expressed concern for the source of *future* funding, particularly if FWS decided against listing the LPC as threatened or endangered. (*Id.*). The Court notes several problems with FWS's conclusion that there is uncertainty regarding the source of future funding. First, the period for enrollment had not yet ended, yet FWS did not attempt to forecast future projections of funding. That is to say, FWS again failed to apply the PECE properly. Here, unlike FWS's assessment concerning landowner enrollment, FWS already had some industry enrollment as a baseline, and there was still time for additional enrollment. FWS noted, "Industry enrollment under the RWP and CCAA has been rapid and extremely significant." (LEPC Range-wide Plan—enrollment update 03/24/2014, LRI Doc. 68 at L001610–11). Even knowing this information, FWS did not attempt to look forward and make a projection. Again FWS erroneously looked to only the present level of industry enrollment and funding to determine there was a high level of uncertainty concerning future industry participation and funding. This was a material error in the application of the PECE to the RWP as FWS failed to conduct a thorough analysis and consider important and material information in reaching a valid determination. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm,* 463 U.S. at 43, 103 S.Ct. 2856. The failure to consider this information was inconsistent with the requirements of the PECE, *see Auer,* 519 U.S. at 461, 117 S.Ct. 905, constituting material error.

Moreover, FWS's determination that "there is a high level of uncertainty that industry would continue to enroll" if FWS decided to not list the LPC as threatened or endangered is based on inconsistent reasoning. FWS stated in the PECE, "It is our intention and belief that the PECE criteria will actually increase the voluntary participation in conservation agreements by increasing the likelihood that parties' voluntary efforts and commitments that have yet to be implemented or have yet to demonstrate results will play a role in a listing decision." PECE, 68 Fed.Reg. at 15,104. FWS apparently abandoned that belief here without offering adequate, let alone any, rationale. FWS's determination is not entitled to deference because its analysis was not sufficiently thorough, nor was its reasoning valid as FWS failed to consider important and material information in reaching its decision. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856. Further, FWS reached its conclusion in a manner inconsistent with its own final policy (the PECE). *See Auer,* 519 U.S. at 461, 117 S.Ct. 905.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; *Auer,* 519 U.S. at 461, 117 S.Ct. 905.

2. *The legal authority of the parties to the agreement or plan to implement the formalized conservation effort,*

*and the commitment to proceed with the conservation effort are described.*

*Authority:* FWS concluded the parties to the RWP agreement each have the authority to enter into their agreements with the RWP administrator. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004030–31). The basis for this conclusion was the fact that each industry participant and landowner would enter into separate contracts with the RWP administrator. (*Id.*). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

*Commitment:* FWS determined the commitment of WAFWA was "clear based on the level of effort exerted to create, market, and implement the rangewide plan." (*Id.* at L004030). However, FWS also concluded the level of commitment by presently enrolled or potential participants was uncertain. (*Id.*). At the time of the RWP PECE evaluation, there were no landowners enrolled. (*Id.*). FWS noted "preliminary indications of the number of impactors signed up is positive," but expressed a desire for more enrollments. (*Id.*). FWS concluded, "There is a high level of uncertainty regarding future enrollment, which is necessary to demonstrate the needed commitment." (*Id.*).

The Court finds FWS's assessment of this criterion fails to properly apply the PECE guidelines for the same reasons it failed to apply the PECE to Criterion 1: Parties. FWS made no effort to forecast the level of commitment in the future. In making its determination, FWS considered only the present level of enrollment, which was not sufficient at that time. No other factors—important or otherwise—were considered in making the determination. FWS should have considered factors not presently included in the record, such as prior industry and landowner participation in other conservation efforts in the area and FWS's assessment of RWP's incentives (e.g., Was it a good deal? Would those incentives make landowner participation more likely?). FWS also failed to include in its analysis the most recent numbers it received prior to the publication deadline. These numbers indicated pending landowner applications, which would have addressed FWS's main concern: lack of landowner participation. FWS acknowledged during the summary judgment hearing that it received these updated enrollment numbers prior to the publication deadline for the final rule and listing determination, (Doc. 90 at 52), but FWS made no effort to include or consider them. This constituted material error as "reliance on out-of-date or incomplete information may render the analysis of effects speculative and uncertain." *See City of Dallas, Tex.,* 562 F.3d at 720. The Court finds this new information should and could have been considered in the RWP PECE evaluation, but it was not. This was material error. FWS failed to properly apply the PECE to the RWP here.

Additionally, FWS downplayed the significance of industry enrollment here, simply because no "landowners," which FWS characterized as individuals enrolling offsetting land, had yet enrolled. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004030–31). While offset land—where no activity negatively affecting the LPC range occurs—is an important aspect of the

RWP, land enrolled by industry participants is an equally important aspect because industry participants agree to restrict and minimize activity that is harmful to the LPC range. FWS failed to factor in this important aspect when it drew its conclusion based largely on lack of present landowner enrollment. This was also a material error in the application of the PECE.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See 5* U.S.C. § 706(2)(A); *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; *Auer,* 519 U.S. at 461, 117 S.Ct. 905.

*3. The legal procedural requirements (e.g., environmental review) necessary to implement the effort are described, and information is provided indicating that fulfillment of these requirements does not preclude commitment to the effort.*

FWS concluded that this factor was satisfied, as it was not aware of any legal procedural requirements needed to implement the RWP. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004031). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

*4. Authorizations (e.g., permits, landowner permission) necessary to implement the conservation effort are identified, and a high level of certainty is provided that the parties to the agreement or plan that will implement the effort will obtain these authorizations.*

FWS concluded the authorizations necessary to implement the RWP, such as permits, were already in place and expressed a high level of certainty that future landowner participants would have the authority to implement the appropriate conservation practices under the RWP. (*Id.*). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

*5. The type and level of voluntary participation (e.g., number of landowners allowing entry to their land, or number of participants agreeing to change timber management practices and acreage involved) necessary to implement the conservation effort is identified, and a high level of certainty is provided that the parties to the agreement or plan that will implement the conservation effort will obtain that level of voluntary participation (e.g., an explanation of how incentives to be provided will result in the necessary level of voluntary participation).*

FWS concluded that the "number and distribution of participants needed to effectively implement the rangewide plan is not identified." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004032). At the time of the RWP PECE evaluation, no landowners had yet enrolled, but the enrollment period was still ongoing. FWS acknowledged during the summary judgment hearing that it received updated enrollment numbers prior to the publication deadline for the final rule and listing determination. (Doc. 90 at 52). The Court previously found it was material error for FWS to not consider these new enrollment applications in forecasting an expected level of commitment and funding going forward. *See* PECE, 68 Fed.Reg. at 15,102.[14] The Court finds

**14.** "If a listing proposal is under review, we will consider any conservation effort. We will evaluate the status of the species in the context of all factors that affect the species'

material error here for the same reasons. Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

6. *Regulatory mechanisms (e.g., laws, regulations, ordinances) necessary to implement the conservation effort are in place.*

FWS concluded this portion of the PECE analysis was satisfied since the RWP did not rely on regulatory mechanisms, instead relying on voluntary, contractual participation. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004032). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

7. *A high level of certainty is provided that the parties to the agreement or plan that will implement the conservation effort will obtain the necessary funding.*

FWS expressed concern in the RWP's ability to obtain the necessary funding if FWS decided not to list the LPC as threatened or endangered. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004032). FWS again relied solely on the fact that funding is directly tied to industry enrollment numbers, which were low at the time, though enrollment was still ongoing. FWS's determination was also explicitly based on its conclusions in Criteria 2 and 5, which the Court previously determined were erroneous and materi-

al. The Court finds FWS's conclusion for Criterion 7 also constituted material error for the same reasons. FWS did not attempt to look forward and make a projection. Again FWS erroneously looked to only the present level of landowner and industry enrollment to determine there was a high level of uncertainty concerning the likelihood of the RWP's implementation. FWS failed to apply the PECE properly.

To the extent FWS was concerned that industry and landowners would have no continued incentive to participate if FWS decided not to list the species, FWS offered no explanation beyond its unsupported conclusion. This includes a failure to explain the reasoning behind FWS's assumption that no incentives to participate exist without listing the LPC as a threatened species.

This was all material error in the application of the PECE to the RWP. The Court finds this assessment was neither thorough nor valid as FWS failed to consider important and material information necessary to make a proper PECE evaluation. *See Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. The failure to consider this information was inconsistent with the requirements of PECE, *see Auer*, 519 U.S. at 461, 117 S.Ct. 905, constituting material error. Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

---

risk of extinction, including all known conservation efforts whether planned, under way, or fully implemented. However, for formalized conservation efforts not fully implemented, or where the results have not been demonstrat-

ed, we will consider the PECE criteria in our evaluation of whether, and to what extent, the formalized conservation efforts affect the species' status under the Act." PECE, 68 Fed. Reg. at 15, 102.

*8. An implementation schedule (including incremental completion dates) for the conservation effort is provided.*

FWS concluded this factor was not satisfied because the RWP does not contain a "formal implementation schedule." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004032). FWS notes that the RWP does have a 30–year term and includes both "temporal components" in the form of periodic assessments and reviews, as well as "established triggers for corrective action." (*Id.*). But FWS still concluded this was insufficient to satisfy Criterion 8 because it was missing an "implementation schedule with incremental completion dates of the plan's 30–year duration." (*Id.*). The distinction between FWS's desired formal, incremental plan and the RWP's "temporal component with corrective action triggers" is not adequately explained by FWS. It is unclear what FWS actually desired and expected from the RWP. The PECE never defines incremental, yet FWS attempts to define and apply it in the narrowest manner possible. This FWS action and interpretation is not entitled to deference because the Court has already determined the PECE is unambiguous. *See Belt,* 444 F.3d at 408 (citing *Christensen,* 529 U.S. at 588, 120 S.Ct. 1655). Moreover, FWS's reasoning here is unpersuasive as the PECE clearly indicates this criterion is meant to be flexible, not rigid. *See id.;* PECE, 68 Fed.Reg. at 15,103. As FWS acknowledged, the RWP contained a schedule with specific review and completion dates, including annual review. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004032). Importantly, the RWP acknowledged that many aspects of LPC ecology and management remain unknown, therefore, rigid and detailed schedules would be impractical. (LPC RWP Final.21102013.pdf, LRI Doc. 667 at L014562–63). Instead, the RWP's schedule needed to be both flexible and adaptable. (*Id.*). The RWP had set timeframes, just not the timeframes FWS apparently preferred. The PECE explicitly states, "This policy does not dictate timeframes for completing conservation efforts," PECE, 68 Fed.Reg. at 15,103, yet FWS arbitrarily dictated its own timeframes here.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; *Auer,* 519 U.S. at 461, 117 S.Ct. 905.

*9. The conservation agreement or plan that includes the conservation effort is approved by all parties to the agreement or plan.*

FWS concluded this PECE factor was satisfied because FWS previously endorsed this conservation effort, as did WAFWA. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004033). Further, all participants will sign certificates of participation. (*Id.*). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

***Part Two: Whether the conservation effort will be effective.***

*1. The nature and extent of threats being addressed by the conservation effort are described, and how the conservation effort reduces the threats is described.*

FWS indicated it believed the RWP would be effective assuming sufficient enrollment by landowners and industry participants. Specifically, FWS stated,

"the rangewide plan will provide a net conservation benefit to the species and lessen the impacts of threats associated with the loss of habitat over time." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004033). FWS then discusses other primary threats the RWP does not cover, such as drought and climate change. But FWS remained optimistic the RWP should result in the LPC becoming more resilient in the future to these environmental changes and threats as a result of surviving present environmental threats. (*Id.*).

The Court finds FWS's critical assumption that the RWP does not address the primary threat of drought and climate change to be arbitrary and capricious to the extent it tainted the RWP PECE analysis for this criterion. This conclusion fails to adequately account for the main function of the RWP: creating additional habitat and access to that habitat (through connectivity zones) to ameliorate the effects of drought and habitat fragmentation. (LPC RWP Final.21102013.pdf, LRI Doc. 667 at L014562–63).

2. *Explicit incremental objectives for the conservation effort and dates for achieving them are stated.*

FWS concluded the RWP "does not contain formal incremental objectives and dates for achieving them." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004033–34). However, FWS noted the RWP does have long-term goals that are reviewed by the plan administrator over the 30–year term in 10–year increments. FWS next went out of its way to note there was uncertainty regarding whether the plan would be implemented, as noted in Part One: Criterion 8, which the Court previously determined was arbitrary and capricious. To the extent FWS's conclusion here is tainted by the erroneous

conclusions in Part One: Criterion 8, the Court finds FWS's conclusion also constitutes error in the application of the PECE to the RWP. Additionally, Part Two of the PECE analysis was intended only to evaluate how likely a plan is to be effective. It does not evaluate how likely a plan is to be implemented, which is confined to Part One of the PECE analysis. Therefore, to the extent FWS considered a factor it should not have during this portion of the analysis, the Court finds that resulted in material error as well.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

3. *The steps necessary to implement the conservation effort are identified in detail.*

FWS stated, "we conclude that the rangewide plan does identify in detail all of the steps necessary to implement the conservation effort, but we continue to have uncertainty regarding the timing, configuration, scope, and scale of the conservation efforts necessary to achieve the stated goals and objectives in the rangewide plan." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004034). In support of this conclusion, FWS explains and lists where all the steps and requirements for the RWP can be found within the plan. However, FWS also referred to previous criteria of the RWP PECE analysis, which found levels of uncertainty concerning the lack of schedules, objectives, commitment, funding, and scope/scale of conservation efforts which the Court has previously determined was material error. To the extent FWS's conclusion here is tainted by the

erroneous conclusions in Part One: Criterion 8 and Part Two: Criterion 2, the Court finds FWS's conclusion also constitutes error in the application of the PECE to the RWP here. Additionally, consideration of conclusions/criteria constrained to Part One of the PECE analysis was improper at this juncture. The focus here in Part Two should have been solely on the projected impact of the RWP, but FWS skewed its analysis and conclusion by considering improper information here. This was material error. Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A); *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm*, 463 U.S. at 43, 103 S.Ct. 2856; *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

*4. Quantifiable, scientifically valid parameters that will demonstrate achievement of objectives, and standards for these parameters by which progress will be measured, are identified.*

FWS concluded, "The rangewide plan includes quantifiable, scientifically valid parameters for its description of quality LPC habitat, population goals, and the commitment to the stronghold approach.... Thus we find this criterion is adequately addressed." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004034). FWS breaks down and lists all of the RWP's population goals and explains how the RWP plans to evaluate them as the basis for this conclusion. Plaintiffs did not explicitly object to this finding. The Court deems this conclusion reasonable as it contains a rational connection to the facts.

*5. Provisions for monitoring and reporting progress on implementation (based on compliance with the implementation schedule) and effectiveness (based on evaluation of quantifiable*

*parameters) of the conservation effort are provided.*

After incorporating by reference the portions of the RWP that discuss the provisions for monitoring, FWS concluded, "we find that this criterion is adequately addressed." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004035). Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

*6. Principles of adaptive management are incorporated.*

FWS concluded, "The rangewide plan includes a rigorous adaptive management program.... Therefore, we find that this criterion is adequately addressed." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004035). In support of this finding, FWS explained the adaptive management principles within the RWP, which includes rigorous review of the population every 5 years and the enactment of new standards depending on the success of the plan in increasing the LPC population. FWS further references the detailed portions of the RWP that address this criterion. Plaintiffs did not explicitly object to this finding. The Court deems this finding reasonable as it contains a rational connection to the facts.

Plaintiffs further challenge an additional assumption/conclusion found at the end of the RWP PECE evaluation. There, FWS concluded:

[I]f the drought persists, the rangewide plan will not create additional usable habitat necessary for the species quickly or at all. This particular threat is largely outside of the ability of management actions to address; therefore, it is a threat that is not addressed by the

rangewide plan, at least over the short term.

(LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004036). The Court finds this critical assumption to be arbitrary and capricious as it fails to account for a main component of the RWP: creating additional habitat and access to that habitat (through connectivity zones) to ameliorate the effects of drought and habitat fragmentation. (LPC RWP Final.21102013.pdf, LRI Doc. 667 at L014562–63). Moreover, to the extent FWS again failed to evaluate the projected effects of the RWP beyond the present and short term, this again constitutes material error.

In sum, the Court finds FWS did conduct an analysis of all 15 criteria under the PECE, however, this analysis was neither "rigorous"[15] nor valid as FWS failed to consider important questions and material information necessary to make a proper PECE evaluation of the RWP. *See Skidmore*, 323 U.S. at 140, 65 S.Ct. 161; *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. Further, the failure to consider this information was inconsistent with the clear requirements of PECE. *See Auer*, 519 U.S. at 461, 117 S.Ct. 905. This missing information materially altered FWS's evaluation and listing determination. FWS expressed confidence in the potential effectiveness of the plan, but was concerned whether it would be implemented. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004036–37). This concern was based almost entirely on low enrollment numbers at the time of the PECE analysis, which were outdated by the time FWS made its listing decision. *See City of Dallas, Tex.,* 562 F.3d at 720. These findings and conclusions were the result of a failure to properly apply the PECE to the RWP. Thus, FWS's PECE analysis fails, even

under *Skidmore, State Farm,* and *Auer.* *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161; *see also State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; *Auer,* 519 U.S. at 461, 117 S.Ct. 905.

Accordingly, the Court finds FWS acted arbitrarily and capriciously, erring in these respects. *See* 5 U.S.C. § 706(2)(A). Because these errors tainted critical findings and determinations, resulting in an unwarranted final rule listing the LPC as a threatened species, the Court vacates the final rue and listing determination.

### 3. Did FWS wrongly add requirements to the PECE analysis of the RWP?

█ Plaintiffs next contend FWS wrongly required the RWP (in its PECE analysis) to eliminate threats at the time the listing decision was made. (Doc. 67–1 at 26–28, 45–47). In the RWP PECE evaluation, FWS stated, "[W]e must be able to show that the plan has contributed to the elimination of one or more threats to the species identified through the 4(1)(A) analysis at the time of the listing determination such that the species no longer meets the definition of threatened or endangered." (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004035).

The Court finds FWS wrongly required proof the RWP had contributed to the elimination of one or more threats to the LPC at the time of the listing decision. FWS misinterpreted and misapplied the PECE here. Moreover, as explained in subpart 2 of this order, FWS's conclusion that the RWP had not contributed to the elimination of one or more threats to the LPC at the time of listing was predicated on a faulty and conclusory PECE evaluation of the RWP.

---

15. *See* PECE, 68 Fed.Reg. at 15,104.

FWS's interpretation of the PECE, requiring that the RWP had to contribute to the elimination of one or more threats at the time of the listing determination, *id.,* is reviewed under *Auer,* as explained in the first subpart of Claim 1. *See Auer,* 519 U.S. at 461, 117 S.Ct. 905. The Court has previously determined that the PECE is unambiguous, therefore, FWS's interpretation of the PECE is only considered to the extent it is persuasive. *See Belt,* 444 F.3d at 408 (citing *Christensen,* 529 U.S. at 588, 120 S.Ct. 1655).[16] The Court finds FWS's explanation of the PECE requirements to be plainly erroneous and inconsistent with the PECE's stated purpose. Therefore, FWS's interpretation of the PECE's requirements are not persuasive.

The PECE's own stated purpose and importance is clear: "Overall, [FWS] need[s] to be certain that the formalized conservation effort improves the status of the species at the time" of the listing decision. PECE, 68 Fed.Reg. at 15,101. While other efforts already in place are evaluated on the basis of whether they have adequately reduced or eliminated a threat, fledging efforts not yet demonstrating effectiveness must be evaluated under the PECE. The PECE determines whether a fledgling effort "improves" a species' status by evaluating (1) the projected likelihood that a given effort will actually be implemented and (2) the projected effectiveness of that effort. *Id.* at 15,100–01. If FWS has confidence the effort will be effective in the future at adequately reducing or eliminating a threat to the species, as well as confidence the effort will be implemented, that consideration may influence FWS to not list the species as threatened or endangered. *See, e.g., Defenders of Wildlife,* 70 F.Supp.3d at 191–92 & n. 11.

In this case, the added requirement that the RWP eliminate or even adequately reduce a specific threat at the time of the listing was improper. FWS narrowed the scope of its analysis from a forward-looking projection, instead treating the RWP as any other conservation effort already implemented and able to be evaluated. The RWP should not have been evaluated on the same level as plans already in place and yielding results because, by definition, plans evaluated under the PECE-like the RWP-will never be able to demonstrate their full effectiveness at the time of the listing decision. It was thus unreasonable for FWS to require the RWP to show it had "eliminated or adequately reduced the threats identified" at the time of listing, such that a listing was no longer needed. (LPC RWP PECE analysis_03142014_FinalClean (1).docx, LRI Doc. 167 at L004035–36). The RWP needed only to demonstrate that it was likely to be effective in improving the LPC's status (and to what degree) and that it was likely to be implemented. Those conclusions should have been considered in conjunction with all other pending and presently implemented efforts in the final rule. FWS erred, acting arbitrarily and capriciously by improperly interpreting and then applying the PECE to the RWP in a cursory and conclusory manner. *See* 5 U.S.C. § 706(2)(A). This error warrants vacatur of the final rule and listing determination.

Therefore, the Court hereby grants summary judgment in favor of Plaintiffs as to this first overarching claim. (Doc. 67). The Court further finds vacatur of FWS's Final Rule listing the LPC as a threatened species is appropriate. *See Cent. & S.W. Servs., Inc. v. EPA,* 220 F.3d 683, 692 (5th Cir.2000) (an agency action found to be in

---

**16.** Alternatively, to the extent the PECE is ambiguous, the Court finds FWS's interpretation and application of the PECE here is "plainly erroneous and inconsistent with the regulation." *See Auer,* 519 U.S. at 461, 117 S.Ct. 905.

violation of the APA must be set aside unless there is a "serious possibility" that the agency will be able to reissue the rule with a better explanation); *see also Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C.Cir.1997) ("[T]he practice of the court is ordinarily to vacate the rule.").

**Claim Two: FWS failed to articulate a rational basis for its decision to list the LPC as a threatened species.**

Plaintiffs' second claim asserts FWS failed to articulate a rational decision to list the LPC as a threatened species based on the available evidence. (Doc. 1 at 49–50). Specifically, Plaintiffs assert as grounds for the second claim in their Complaint:

> The Service did not provide a rational justification for why its documented increases in both population and range over the course of the last decade—either alone or in combination with the significant habitat-conservation and other mitigation efforts being undertaken and planned by governmental and private entities across the LPC range—could not or did not lead to the conclusion that the LPC is *unlikely* to become in danger of extinction in the foreseeable future.

(Doc. 1 at 50) (emphasis original). Plaintiffs did not explicitly move for summary judgment on this claim. (Doc. 67). Defendants move for summary judgment, contending Plaintiffs have not met their burden and have provided no evidence in support of this claim. (Doc. 66). Plaintiffs' Response failed to address Claim 2 and Defendants' Motion for Summary Judgment regarding the same, instead focusing solely on issues related to Claim 1.

However, in footnote 13 of Plaintiffs' Reply, Plaintiffs contend they have not waived this second claim, but rather addressed it in both the Motion for Summary Judgment and Response citing four pages in each where they purportedly addressed this claim. (Doc. 83 at 19 n. 13). These pages all discuss individual arguments in furtherance of Plaintiffs' first claim and nothing else. Moreover, these pages all reference and quote portions of the RWP PECE evaluation. (*Id.*). The context is clear: Plaintiffs' entire basis for summary judgment and vacatur both relied solely on FWS's failure to adequately apply the PECE. Claim 2 was never expressly addressed.

 Because Plaintiffs have "failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," Defendants are entitled to summary judgment as to Claim 2. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);[17] *San Luis Obispo Mothers for Peace*, 789 F.2d at 37 ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof."); (Doc. 66). Alternatively, to the extent Plaintiffs' Motion for Summary Judgment and Response do contain some references to Claim 2, the Court finds those few references are still insufficient to satisfy their burden of proof as to Claim 2.

Accordingly, the Court grants summary judgment in favor of Defendants as to Claim 2. (Doc. 66; Doc. 74 at 43–45).

---

**17.** "If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

*Claim Three: FWS failed to respond to significant and highly relevant comments raised by Plaintiffs.*

Plaintiffs' third claim in this case asserts FWS did not respond to significant and highly relevant comments raised by Plaintiffs. (Doc. 1 at 50–5). Plaintiffs did not move for summary judgment on this claim. (Doc. 67). Defendants move for summary judgment, contending Plaintiffs have not met their burden and have provided no evidence in support of this claim. Plaintiffs do not contest they have waived this issue.[18] Plaintiffs' Response failed to address Claim 3 and Defendants' Motion for Summary Judgment regarding the same, instead focusing solely on issues related to Claim 1. Because Plaintiffs have "failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," Defendants are entitled to summary judgment as to Claim 3. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *San Luis Obispo Mothers for Peace,* 789 F.2d at 37 ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof."); (Doc. 66).

Accordingly, the Court grants summary judgment in favor of Defendants as to Claim 3. (Doc. 66; Doc. 74 at 43–45).

### Conclusion

Accordingly, the Court hereby GRANTS summary judgment in favor of Plaintiffs as to Claim 1. (Doc. 67).

Furthermore, the Court hereby VACATES FWS's Final Rule listing the LPC as a threatened species.

Further, the Court hereby GRANTS summary judgment in favor of Defendants

as to Claims 2 and 3. (Doc. 66; Doc. 74 at 43–45).

**It is so ordered.**

---

**18.** While Plaintiffs argue they have not waived Claim 2, Plaintiffs do not contest waiver concerning Claim 3. (Doc. 83 at 19 n. 13).